UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-00091-TBR

UNITED STATES OF AMERICA,                                          Plaintiff,

v.

TOMAS SARSEVICIUS,                                               Defendant.

## MEMORANDUM OPINION AND ORDER

On August 19, 2015, Tomas Sarsevicius was indicted on two counts of theft of an interstate shipment by carrier.  Now, Sarsevicius asks this Court to suppress all statements he made to law-enforcement officers, and any evidence derived therefrom, during four separate interviews.  According to Sarsevicius, those law-enforcement officers interviewed him in violation of his Fifth and Sixth Amendment rights.  Having considered the totality of the circumstances, Sarsevicius's Motion to Suppress, R. 29, is **DENIED**.

### I.

### A.

Tomas Sarsevicius, a Lithuanian national, entered the United States on October 16, 2012 on a three-month visa.  R. 32 at 64–65 (Sarsevicius's Testimony).  While in Lithuania, Sarsevicius graduated from high school and completed three years of college in the field of computers.  *Id.* at 63–64.  He is capable of assembling computers, sending e-mails, browsing the Internet, and operating word-processing programs (such as Microsoft Word).  *Id.* at 64.  In addition to speaking Lithuanian and Russian, Sarsevicius speaks and writes English "very well."  *Id.* at 6–7 (Investigator Linares's Testimony); *see*

*also id.* at 41 (Special Agent Aviotti's Testimony) (describing Sarsevicius's English as "excellent" and "fine").

*March 6, 2015 Arrest.*  Upon the affidavits of Special Agent Patrick Aviotti of the Georgia Bureau of Investigation, the State of Georgia issued two arrest warrants for Sarsevicius on January 29, 2015.  *See* R. 36-2 at 1–2 (Georgia Arrest Warrants). The affidavits charged Sarsevicius with theft of cargo and using false identification in furtherance of a felony, *id.*, both felonies under Georgia law, *see* Ga. Code Ann. § 16-8-22(b)(1) (theft of cargo); Ga. Code Ann. § 16-9-4(b)(4) (use of false identification).  On March 6, 2015, authorities in Illinois arrested Sarsevicius on those outstanding arrest warrants.  R. 32 at 4 (Investigator Linares's Testimony).

*March 6, 2015 Interview.*  Later that same day, Investigator Chris Linares of the Illinois State Police, along with Special Agent Greg Miceli of the Federal Bureau of Investigation, interviewed Sarsevicius at Investigator Linares's office in Lockport, Illinois.  *Id.* at 3–4.  Before beginning the interview, Investigator Linares read Sarsevicius his *Miranda* rights, and Sarsevicius acknowledged that he understood them.  *Id.* at 4; *see also id.* at 65 (Sarsevicius's Testimony).  Investigator Linares then presented Sarsevicius with a written document explaining his *Miranda* rights and waiving them.[1]  *Id.* at 5–6

---

[1] The Illinois State Police Statement of Constitutional Rights and Waiver reads:

Before we ask you any questions, it is my duty to advise you of your rights:
1.   You have the right to remain silent.
2.   Anything you say can and will be used against you in court or other proceedings.
3.   You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.
4.   If you cannot afford a lawyer, one will be appointed for you, free of any cost to you, before any questioning if you wish.
. . . .
I understand what my rights are, and I am willing to answer questions.

Suppression Hr'g Ex. 2 at 1 (Illinois State Police Statement of Constitutional Rights and Waiver).

2

(Investigator Linares's Testimony); *see also* Suppression Hr'g Ex. 2 at 1 (Illinois State Police Statement of Constitutional Rights and Waiver).  Investigator Linares read it to Sarsevicius and allowed Sarsevicius to read it too.  R. 32 at 5–6.  Sarsevicius initialed each line and signed the form, indicating he understood his *Miranda* rights and agreed to waive them.  *Id.* at 6; *see also id.* at 65 (Sarsevicius's Testimony); Suppression Hr'g Ex. 2 at 1.

Once *Mirandized*, the group discussed Sarsevicius's alleged involvement in cargo thefts in and around Kentucky, Illinois, and Georgia.  R. 32 at 9–10 (Investigator Linares's Testimony).  About three hours into the interview, Investigator Linares gave Sarsevicius a preprinted form on which provided a written statement.  *See id.* at 7; *see also* Suppression Hr'g Ex. 1 at 1 (Sarsevicius's Statement).  The preprinted form recited the following:

> I have been advised and duly warned . . . .
>
> 1.      That I have the right to remain silent;
>
> 2.      That anything I say can and will be used against me in a court of law;
>
> 3.      That I have the right to talk with a lawyer now and have him present with me while being questioned;
>
> 4.      If I cannot afford to hire a lawyer, one will be furnished to represent me, free of any cost, before questioning.
>
> I state that I understand each of these rights and that I did not at any time ask that a lawyer be present to represent me in this matter.  I hereby voluntarily agree to make the following statement which is made of my own free will, without promise of reward or favor, without fear or threat of physical harm, without coercion, and without offer of leniency by any person or persons.

Suppression Hr'g Ex. 1 at 1.  Before Sarsevicius wrote his seven-page statement, Investigator Linares read the above-quoted language to him, and Sarsevicius initialed

3

after each line indicating he understood it.  *See* R. 32 at 7–9; *see also* Suppression Hr'g Ex. 1 at 1.  Sarsevicius signed all seven pages.  *See* R. 32 at 7–9; Suppression Hr'g Ex. 1 at 1–7.

All told, the interview (memorialized in writing only) lasted about five hours.  *See* R. 32 at 5, 10.  During the course of the interview, Sarsevicius neither requested an attorney, nor asked that the questioning stop.  *Id.* at 10–11.  No one promised him leniency or threatened him.  *Id.* at 11.  Investigator Linares described Sarsevicius's demeanor as "very cooperative, very cordial, [and] very talkative."  *Id.*  Sarsevicius was allowed to "take breaks, go to the bathroom, [and] request food or drink."  *Id.* at 16.  In fact, Investigator Linares provided Sarsevicius with Burger King.  *Id.*  Investigator Linares concluded the interview around 5:49 p.m. *Id.* at 10.

*March 9, 2015 Extradition Hearing.*  On March 9, 2015, Sarsevicius appeared before the Illinois Circuit Court for an extradition hearing.[2]  *See* R. 36-5 at 1 (Extradition Hearing Transcript).  The hearing concluded when Sarsevicius consented to extradition to Georgia.  *See* R. 36-4 at 4 (Waiver of Extradition); *see also* R. 36-5 at 4–5.

*March 10, 2015 Interview.*  The following day, Inspector Linares and Special Agent Miceli interviewed Sarsevicius again, this time at the Will County Jail.  R. 32 at 12, 14.  Just as before, Investigator Linares read Sarsevicius his *Miranda* rights, and Sarsevicius acknowledged that he understood them.  *Id.* at 12; *see also id.* at 65 (Sarsevicius's Testimony); Suppression Hr'g Ex. 4 at 00:34–00:53 (Video of *Miranda* Warning).  Investigator Linares presented Sarsevicius with a copy of the same form

---

[2] According to Sarsevicius, he asked for and was appointed an attorney at that hearing.  R. 32 at 61 (Sarsevicius's Testimony).  However, the Court does not find Sarsevicius's recollection of that event to be accurate.  Though Assistant Public Defender Patricia Adair provided some *assistance* to Sarsevicius during the hearing, she expressly declined to accept an appointment to represent Sarsevicius—a fact made clear by the hearing transcript.  R. 36-5 at 1–2 (Extradition Hearing Transcript).

explaining his *Miranda* rights as before the earlier interview.   R. 32 at 12–14 (Investigator Linares's Testimony); *see also* Suppression Hr'g Ex. 3 at 1 (Illinois State Police Statement of Constitutional Rights and Waiver).   Sarsevicius initialed each line, indicating he understood his rights and agreed to waive them, and signed the bottom of the form.   R. 32 at 14; *see also id.* at 65 (Sarsevicius's Testimony); Suppression Hr'g Ex. 3 at 1; Suppression Hr'g Ex. 4 at 00:58–01:34.

The video-recorded interview lasted about two hours.   R. 32 at 13 (Investigator Linares's Testimony).   Sarsevicius never asked for an attorney, *id.* at 15, and Inspector Linares testified that he had no knowledge as to whether Sarsevicius had appeared in court or had been appointed an attorney, *id.* at 26–27.   Again, Sarsevicius seemed cooperative, coherent, and never requested that the interview cease.   *Id.* at 15.   There were no promises of leniency or threats made against him.   *Id.*   Sarsevicius was allowed to "take breaks, go to the bathroom, [and] request food or drink."   *Id.* at 16.   The interview ended at around 4:00 p.m.   *See id.* at 13; Suppression Hr'g Ex. 3 at 1.

*March 21, 2015 Initial Appearance in Georgia.*   Subsequently, Sarsevicius was extradited to Georgia, and arrived at the Carroll County Jail on March 20 around 8:30 p.m.   R. 32 at 39 (Special Agent Aviotti's Testimony).   On the morning of March 21, Sarsevicius appeared before Chief Magistrate Judge Alton P. Johnson of the Carroll County Magistrate Court.   *See* R. 36-3 (Record of First Appearance Proceeding).   From the limited documentation available, it seems as if Sarsevicius requested, and that Judge Johnson appointed, counsel to represent him during that proceeding.   *See id.*

*March 21, 2015 Interview.*   Special Agent Aviotti arrived at the Carroll County Jail at about 8:35 p.m. later that day.   R. 32 at 41.   Special Agent Aviotti testified:

> I asked if I could talk to Tomas because I wanted to give my business card, let him know that if his lawyer wants to call me, I had my number, and if he wanted to speak to me, that would be fine too. . . . When Tomas came down, I introduced myself.  I told him what charges he was charged with, that I was the one who was charging him, and I asked him if he wanted to talk or take my business card to give to his lawyer.  He said he wanted to talk.

*Id.* at 40.   Sarsevicius said that he wished to speak with him, so Special Agent Aviotti gave Sarsevicius a document explaining and waiving his *Miranda* rights.  *Id.* at 41; *see also* Suppression Hr'g Ex. 5 at 1 (Carroll County Sheriff's Office *Miranda* Waiver).  The form read as follows:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in a court of law.
>
> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before questioning if you wish.
>
> If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time.  You also have the right t[o] stop answering questions at any time until you talk to a lawyer.
>
> . . . .
>
> I have read this statement of my rights and I understand what my rights are.  I am willing to make a statement and to answer questions.  I do no[t] want a lawyer at this time.  I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me.

Suppression Hr'g Ex. 5 at 1.

Special Agent Aviotti asked Sarsevicius to read each line, and then circle it.  R. 32 at 41; *see also* Suppression Hr'g Ex. 5 at 1.  Once Sarsevicius had done so, Special Agent Aviotti read the same line out loud, and Sarsevicius initialed that line, acknowledging he

understood it, then signed the waiver.  R. 32 at 41–42; *see also id.* at 65 (Sarsevicius's Testimony); Suppression Hr'g Ex. 5 at 1.

The audio-recorded interview lasted a little over three hours.  R. 32 at 44 (Special Agent Aviotti's Testimony).  During that time, Sarsevicius neither asked Special Agent Aviotti to stop questioning him, nor requested an attorney.  *Id.*  Near the end of the interview, Special Agent Aviotti told Sarsevicius that "investigators from Kentucky would like to talk to him," and asked if he "would be willing to speak to them with his lawyer."  *Id.* at 53.  Sarsevicius responded affirmatively.  *Id.*

*April 2, 2015 Interview.*  On April 2, Special Agent Aviotti arranged to speak with Sarsevicius at the Carrollton Police Department.  *See id.* at 46; Suppression Hr'g Ex. 8 at 02:24–02:26 (Video of *Miranda* Warning).  Detective Israel Slinker of the Kentucky State Police accompanied him.  R. 32 at 46.  Sarsevicius's public defender was present too.  *Id.*

Before any questioning took place, Sarsevicius's attorney explained the *Miranda* process to him.  *See* Suppression Hr'g Ex. 8 at 02:09–04:18.  Next, Special Agent Aviotti presented Sarsevicius with a written explanation and waiver of his *Miranda* rights and read them to Sarsevicius.[3]  R. 38 at 48; *see also* Suppression Hr'g Ex. 7 at 1 (Carrollton

---

[3] The Carrollton Police Department Statement of Miranda Rights read, in relevant part:

1.      You have the right to remain silent.
2.      Anything you say can and may be used against you in a court of law.
3.      You have the right to talk to an attorney and have him/her present with you while you are being questioned.
4.      If you cannot afford to hire an attorney, one will be appointed to represent you before any questioning, if you wish.
5.      You can decide at any time to exercise these rights and not answer any questions or make any statements.

I understand my rights.  Having these rights in mind, I am willing now to talk . . . . I have not been threatened.  I have not been promised anything.  I have not been forced in any way to answer any questions or to make any statements.

Police Department Statement of *Miranda* Rights); Suppression Hr'g Ex. 8 at 04:18–06:17.  Sarsevicius then initialed each line indicating he understood his rights and signed the document agreeing to waive them.  R. 32 at 48; *see also* Suppression Hr'g Ex. 7 at 1; Suppression Hr'g Ex. 8 at 04:18–06:17.

The interview lasted around three hours and twenty-five minutes.  R. 32 at 47. Special Agent Aviotti bought Sarsevicius lunch and made bottled water available to him. *Id.*  During the interview, the group took bathroom breaks.  *Id.*  It does not appear as if Sarsevicius was handcuffed or restrained.  *See generally* Suppression Hr'g Ex. 8.  Special Agent Aviotti made no threats or promises to Sarsevicius, and Sarsevicius never asked to conclude the interview.  R. 32 at 47–49.  When Sarsevicius and his attorney asked Special Agent Aviotti and Detective Slinker to leave the room "so they could talk," the pair honored that request.  *Id.* at 49.  The interview was over by about 5:15 p.m.  *See id.* at 47; Suppression Hr'g Ex. 7 at 1.

### B.

On August 19, 2015, Tomas Sarsevicius was indicted on two counts of theft of an interstate shipment by carrier.  *See* R. 1 at 1–2 (Indictment).  Now, Sarsevicius asks the Court to suppress any statements or evidence obtained as a result of the custodial interrogations discussed earlier.  *See* R. 29 at 1 (Motion to Suppress); R. 38 at 1–2 (Supplemental Brief in Support of Motion to Suppress).  The Court held a suppression hearing on March 22, 2016, *see* R. 27 at 1, ¶ 7 (Scheduling Order), and has the benefit of supplemental materials provided thereafter, *see* R. 35 at 1 (Order of March 29, 2016).

---

Suppression Hr'g Ex. 7 at 1 (Carrollton Police Department Statement of Miranda Rights).

## II.

"The Fifth Amendment says that an individual may not be 'compelled in any criminal case to be a witness against himself.'" *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quoting U.S. Const. amend. V).  In order to safeguard that right, law-enforcement officers must inform a suspect of his rights under the Fifth Amendment—including his right to remain silent in response to the officers' questions, and his right to the presence of an attorney—before conducting a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Absent the requisite *Miranda* warning, "any incriminating responses to questioning may not be introduced into evidence in the prosecution's case in chief." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990).

Though not identical, the Sixth Amendment affords protections compatible with those conferred by the Fifth Amendment.  "'In all criminal prosecutions,' the Sixth Amendment says, 'the accused shall enjoy the right . . . to Assistance of Counsel for his defence.'" *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (quoting U.S. Const. amend. VI).  Unlike the Fifth Amendment, however, the Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against" the accused. *United States v. Gouveia*, 467 U.S. 180, 187 (1984); *accord United States v. Moody*, 206 F.3d 609, 614 (6th Cir. 2000).  Once the right attaches, the accused enjoys "a right to counsel at critical stage of a criminal proceeding," *Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)), and the Government "may not 'deliberately elicit' incriminating statements from [him] without the presence of his attorney," *Alexander v.*

9

*Smith*, 311 F. App'x 875, 886 (6th Cir. 2009) (per curiam) (quoting *United States v. Henry*, 447 U.S. 264, 270 (1980)).

Of course, a person may waive his Fifth or Sixth Amendment rights, provided he does so voluntarily and knowingly and intelligently. *Compare Moran v. Burbine*, 475 U.S. 412, 421 (1986) (discussing waiver of right to counsel under *Miranda*), *with Patterson v. Illinois*, 487 U.S. 285, 292 & n.4, 297–300 (1988) (discussing waiver of right to counsel under Sixth Amendment). A suspect's valid waiver of his *Miranda* rights generally amounts to a waiver of his Sixth Amendment right to counsel too, "even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment." *Montejo*, 556 U.S. at 786; *see also United States v. Rojas*, 553 F. App'x 891, 893 (11th Cir. 2014); *United States v. States*, 652 F.3d 734, 741–42 (7th Cir. 2011).

In either case, a waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *Moran*, 475 U.S. at 421). Put differently, "coercive police activity" is required to establish an involuntary waiver. *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)); *see also United States v. Dunn*, 269 F. App'x 567, 572 (6th Cir. 2008). A waiver is "knowing and intelligent" when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis*, 560 U.S. at 382–83 (quoting *Moran*, 475 U.S. at 421). To aid in that inquiry, the Court looks to factors such as "the suspect's 'age, experience, education, background, and intelligence,'" *Montgomery*, 621 F.3d at 573 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)), as well as "the length and nature of the questioning, the advice [given]

regarding *Miranda* rights, and the use of physical punishment, such as deprivation of food or sleep," *United States v. Hampton*, 572 F. App'x 430, 433 (6th Cir. 2014) (citing *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009)).  In evaluating both prongs, the Court "must consider the 'totality of the circumstances surrounding the interrogation.'"  *Id.* (quoting *Moran*, 475 U.S. at 421).

### III.

Sarsevicius asks the Court to suppress all statements he made to law-enforcement officers, and any evidence derived therefrom, as taken in violation of his Fifth and Sixth Amendment rights.  *See* R. 29 at 1–2; R. 38 at 1–3.  He advances two arguments.  First, Sarsevicius tasks the Government with showing that he voluntarily and knowingly and intelligently waived his *Miranda* rights in all four interviews.  *See* R. 29 at 2; R. 38 at 1–2; *see also* R. 32 at 68 (Oral Argument).  Second, Sarsevicius maintains his interviews on March 10 and March 21 must be suppressed because the Government violated his Sixth Amendment right to counsel.  *See* R. 38 at 3–10.  The Court disagrees on both points, and so denies Sarsevicius's motion.

### A.

The Government has carried its burden to establish that Sarsevicius voluntarily and knowingly and intelligently waived his *Miranda* rights prior to all four interviews.[4]

### 1.

*First*, Sarsevicius acted voluntarily in waiving his *Miranda* rights.  There is no evidence of any coercion, intimidation, or deception on the part of the law-enforcement

---

[4] There is no dispute that all four interviews amounted to "custodial interrogations" as is required before *Miranda*'s safeguards come into play.

officers involved that would make Sarsevicius's actions anything less than voluntary. None of the law-enforcement officers promised Sarsevicius anything in return for his cooperation. *See United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003) ("Police promises of leniency and threats of prosecution can be objectively coercive."). The longest of the four interviews lasted around five hours, and law-enforcement officers allowed Sarsevicius to take bathroom breaks as needed and provided him with food on two occasions. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1069–70 (6th Cir. 1994) (finding three-hour interrogation lasting until 3:00 a.m. to be reasonable and not coercive). Sarsevicius voluntarily waived the protections afforded by *Miranda*.

## 2.

*Second*, Sarsevicius knowingly and intelligently waived his *Miranda* rights. Sarsevicius is thirty-three years of age, holds a high school diploma, and has three years of college education. *See Hampton*, 572 F. App'x at 435 (finding a thirty-two year old arrestee with a tenth grade education knowingly and intelligently waived his *Miranda* rights). Despite not being his native language, Sarsevicius is able to speak, read, write, and understand English. *See United States v. Alaouie*, 940 F.2d 663, 1991 WL 144479, at *5 (6th Cir. 1991) (unpublished table decision) (finding Lebanese defendant knowingly waived his *Miranda* rights by acknowledging that he understood his rights and by providing statements in English). Before each of the four interviews, law-enforcement officers advised Sarsevicius of his *Miranda* rights, and Sarsevicius waived his rights not only orally, but also in writing. *See Jackson v. McKee*, 525 F.3d 430, 436 (6th Cir. 2008) (finding knowing and intelligent waiver in similar circumstances). Sarsevicius stated that he understood his rights both then and at the suppression hearing. At no point did

12

Sarsevicius indicate he wished to remain silent or speak to an attorney.  In short, he knowingly and intelligently waived his *Miranda* rights.

**3.**

Having examined the totality of the circumstances, the Court concludes that Sarsevicius voluntarily and knowingly and intelligently waived his *Miranda* rights prior to all of the four interviews in question.

**B.**

Still, Sarsevicius maintains that law-enforcement officers took his statements on March 10 and March 21 in violation of his Sixth Amendment right to counsel.  *See* R. 38 at 3–10.  For two reasons, the Court disagrees.

*First*, Sarsevicius's Sixth Amendment rights had not matured as of the March 10 interview.  As discussed earlier, the right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against" the accused.  *Gouveia*, 467 U.S. at 187.  According to Sarsevicius, his extradition hearing in Illinois fits that bill. *See* R. 38 at 6–8.  But the Sixth Circuit Court of Appeals has rejected that suggestion: "The Sixth Amendment does not mandate a right to counsel in [interstate extradition proceedings], since 'an extradition hearing has a modest function not involving the question of guilt or innocence.'"  *United States v. Doherty*, 126 F.3d 769, 782 (6th Cir. 1997) (quoting *Judd v. Vose*, 813 F.2d 494, 497 (1st Cir. 1987)), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001).

True, as Sarsevicius points out, that passage is dicta.  *See* R. 38 at 7.  Yet, "it may nevertheless be followed if 'sufficiently persuasive.'"  *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002) (quoting *Cent. Green Co. v.*

13

*United States*, 531 U.S. 425, 431 (2001)).  A good number of federal courts have found it to be just that.  *See, e.g.*, *Anderson v. Alameida*, 397 F.3d 1175, 1180–81 (9th Cir. 2005); *DeSilva v. DiLeonardi*, 181 F.3d 865, 868–69 (7th Cir. 1999) (Easterbrook, J.); *Chewning v. Rogerson*, 29 F.3d 418, 421 (8th Cir. 1994); *Judd*, 813 F.2d at 497; *McDonald v. Burrows*, 731 F.2d 294, 297 (5th Cir. 1984); *Caltagirone v. Grant*, 629 F.2d 739, 748 n.19 (2d Cir. 1980); *Payne v. Smith*, 207 F. Supp. 2d 627, 641 (E.D. Mich. 2002).  The Court agrees with that collective wisdom:  A person's Sixth Amendment right to counsel does not inure at an extradition hearing.  Consequently, at the time of the March 10 interview, Sarsevicius had no right to counsel under the Sixth Amendment.[5]

## 2.

*Second*, although that right attached at his initial appearance on the morning of March 21, Sarsevicius voluntarily and knowingly and intelligently waived it.  Even after counsel is appointed, law-enforcement officers may approach the accused, ask him to waive his right to counsel, and initiate questioning.  *See Rojas*, 553 F. App'x at 893 ("[J]ust because a defendant is represented by counsel does not mean police are precluded from approaching [that] defendant and seeking [his] consent to interrogation." (citing *Montejo*, 556 U.S. at 789)); *United States v. Kruse*, No. CR 11-2019, 2011 WL 1871237, at *8–9 (E.D. Iowa May 16, 2011) (same), *adopted by* No. 11-CR-2019-LRR, 2011 WL 2413667 (E.D. Iowa June 13, 2011), *aff'd*, 603 F. App'x 512 (8th Cir. 2015).  And when an accused "is read his *Miranda* rights (which include the right to have

---

[5] Even if Sarsevicius's right to counsel attached at the extradition hearing, he voluntarily and knowingly and intelligently relinquished it when he waived his *Miranda* rights prior to the start of the March 10 interview as discussed below.

counsel present during interrogation) and agrees to waive those rights," such action is sufficient to waive his Sixth Amendment right to counsel too.  *Montejo*, 556 U.S. at 786.

Here, Special Agent Aviotti informed Sarsevicius of his *Miranda* rights prior to beginning the March 21 interview, and Sarsevicius voluntarily and intelligently waived them.  *See supra* Part III.A.  Sarsevicius made no request for his attorney to be present before or during the interview.  Because Sarsevicius's "*Miranda* waiver was valid, it was sufficient to waive his right to counsel under the Sixth Amendment as well."  *Rojas*, 553 F. App'x at 894 (citing *Montejo*, 556 U.S. at 786).

### 3.

In sum, the Court concludes that Sarsevicius either had no right to counsel (as in the case of the March 10 interview), or waived such a right (as in the case of the March 21 interview), under the Sixth Amendment.

### IV.

**IT IS HEREBY ORDERED** that Defendant Tomas Sarsevicius's Motion for a Suppression Hearing, R. 29, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Tomas Sarsevicius's Motion to Suppress Statements, R. 29, is **DENIED**.

**IT IS FURTHER ORDERED** that because the Government has already produced the information sought, *see* R. 38 at 2, n.1, Defendant Tomas Sarsevicius's Motion to Compel Discovery, R. 29, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Date:

cc:      Counsel of Record